**REVISED June 6, 2016**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60445

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2016

Lyle W. Cayce
Clerk

GUARANTY BANK & TRUST COMPANY,

Plaintiff - Appellee

v.

AGREX, INCORPORATED, doing business as FGDI, Wholly Owned
Subsidiary of Mitsubishi Corporation,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:

David Walker received a loan from Plaintiff–Appellee Guaranty Bank &
Trust Company to produce his 2012 crop of soybeans and corn. Guaranty took
a production-money security interest in Walker's crops, and Walker later
delivered these crops to Defendant–Appellant Agrex, Incorporated, d/b/a
FGDI, under a series of contracts. Because Walker failed to fulfill all of his
contracts with FGDI, FGDI applied a set-off to the amount it owed Walker for
his crops in order to cover its losses arising from the undelivered crops.
Guaranty then filed the instant action against FGDI to recover the entire

No. 15-60445

amount due Walker under his contracts with FGDI and moved for summary judgment, asserting that its security interest took priority over FGDI's right to apply set-offs under the contracts. The district court granted summary judgment to Guaranty. Because FGDI took Walker's crops subject to Guaranty's security interest under the Food Security Act of 1985, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The farming partnership Murtaugh-Walker Farms ("MWF") and Defendant–Appellant Agrex, Incorporated, d/b/a FGDI ("FGDI"), entered into four commodity futures contracts to deliver corn and soybeans in 2010. MWF determined that it could not perform these contracts and dissolved soon after. FGDI and David Walker, a farmer and former partner in MWF, agreed to assign the commodity futures contracts to Walker. Walker and FGDI further agreed to delay the required delivery of the agricultural goods until 2012. All of these contracts contained provisions allowing FGDI to apply set-offs to amounts owed to the farmer before making any payments of net proceeds. In March, June, and July of 2012, Walker entered into three additional corn commodity contracts. These contracts required delivery of agricultural goods later in 2012.

On April 12, 2012, Walker met with Plaintiff–Appellee Guaranty Bank & Trust Company ("Guaranty"). Walker signed an Agricultural Loan Agreement ("ALA"), a Promissory Note, and an Agricultural Security Agreement ("ASA"), for a production-money loan to finance his 2012 crops. This loan was secured by Walker's 2012 crops, farm products, equipment, and accounts. On April 18, 2012, Guaranty filed a financing statement with the Mississippi Secretary of State, perfecting its security interest in Walker's 2012 corn and soybean crops.

2

No. 15-60445

Over the course of the 2012 growing season, Walker drew over $400,000 to fund his growing operations.  Following the 2012 season, Walker delivered all of his corn and soybean crops to two Mississippi grain terminals.  After FGDI notified the terminals of its contracts with Walker, the terminals applied the crops to FGDI's account, and FGDI then sold the grain to the terminals.  According to FGDI, Walker fulfilled all of his corn contracts, but he did not fulfill one soybean contract.  For the corn contracts and fulfilled soybean contracts, FGDI concluded that it owed Walker $417,033.00.  Before paying Walker, however, FGDI applied a set-off in the amount of $359,853.62, based on its loss resulting from the unfulfilled soybean contract.  Guaranty, through a demand letter, requested the proceeds of Walker's 2012 crops from FGDI on February 12, 2013.  Guaranty claimed that its recorded financing statement, covering Walker's 2012 crops, gave its security interest in Walker's crops priority over any interest FGDI asserted, including its set-off rights.  FGDI issued a check payable to Walker and Guaranty for $57,179.38—the difference between the amount that FGDI determined it owed Walker under the fulfilled contracts and the set-off FGDI applied because of the unfulfilled soybean contract.

On April 26, 2013, Guaranty filed suit in state court against FGDI, seeking to recover the full amount of the proceeds derived from Walker's crops, i.e., $417,033.00.  FGDI removed the action to federal court on May 24, 2013, asserting diversity jurisdiction.[1]  On January 16, 2015, both Guaranty and FGDI moved for summary judgment.  On May 22, 2015, the district court granted summary judgment to Guaranty, finding that it had paramount

---

[1] Guaranty also named as defendants the grain terminals to which Walker had delivered his crops, but the district court later dismissed these non-diverse parties.

priority in Walker's crops and that Guaranty had possessory rights of Walker's crop proceeds before the application of FGDI's set-off.[2]  FGDI timely appealed.

## II. STANDARD OF REVIEW

This court "review[s] a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'"  *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III. SECURITY INTERESTS UNDER THE FOOD SECURITY ACT

As an initial matter, we address the nature of Guaranty's interest in the crops Walker delivered to FGDI.  On April 12, 2012, Walker signed an ALA, a Promissory Note, and an ASA with Guaranty.  The ASA granted Guaranty a security interest in "All Inventory, Chattel Paper, Accounts, General Intangibles, *Crops*, Farm Products, [and] Livestock."  The ASA further provided that the collateral "include[d] any and all of [Walker's] present and future rights, title and interest in and to all crops growing or to be planted . . . and all proceeds derived or to be derived therefrom."  Walker used approximately $400,000 from Guaranty in the production of his 2012 crops.

---

[2] The district court noted that this "contractual priority dispute is [a case] of first impression in Mississippi."

No. 15-60445

Because Walker used the money obtained through his loan with Guaranty to grow crops and because this loan was secured by his crops, Walker's obligation to Guaranty was a production-money obligation and his crops were production-money crops. *See* Miss. Code Ann. § 75-9-102(a)(64A) ("'Production-money crops' means crops that secure a production-money obligation incurred with respect to the production of those crops."); Miss. Code Ann. § 75-9-102(a)(64B) ("'Production-money obligation' means an obligation of an obligor incurred for new value given to enable the debtor to produce crops if the value is in fact used for the production of the crops."). Therefore, Guaranty obtained a production-money security interest ("PMSI") in Walker's crops because "[a] security interest in crops is a production-money security interest to the extent that the crops are production-money crops." Miss. Code Ann. § 75-9-103A(a). Guaranty perfected its PMSI on April 18, 2012, when it filed a financing statement with the Mississippi Secretary of State, consistent with the requirements of Miss. Code Ann. §§ 75-9-310(a), 75-9-320(f).[3]

When Guaranty perfected its PMSI by complying with Mississippi law, it also secured the protections of the Food Security Act of 1985 ("FSA"). *See* 7 U.S.C. §§ 1621, 1631; *see generally Law of Secured Transactions Under the UCC* ¶ 8.08[4][A]–[B] [hereinafter LSC] (noting that Congress passed the FSA to create consistency in the protections afforded to both buyers and secured parties). Under the FSA, buyers of farm products take the products free of security interests unless the buyer received direct notice of the security interest or purchased the agricultural products in a state with a centralized filing system.[4]   7 U.S.C. § 1631(e). Mississippi is such a state, as the

---

[3] FGDI does not dispute that Guaranty filed an appropriate financing statement, consistent with the requirements of Mississippi law.

[4] Because neither party disputes FGDI's status as a buyer, we assume for purposes of this opinion that FGDI qualifies as a buyer, despite its set-off claim.

No. 15-60445

Mississippi Secretary of State maintains a centralized filing system of financing statements consistent with the requirements of the FSA. *See* 7 U.S.C. § 1631(c)(2) (describing the requirements of a centralized filing system under the FSA); Miss. Code Ann. § 75-9-320(g) (directing the Mississippi Secretary of State to "issue regulations implementing a central filing system relating to farm products which conforms with the requirements of" the FSA). Because Guaranty included all of the information required by the FSA to file an "effective financing statement" when it filed its financing statement with Mississippi's centralized system, it secured the protections afforded by the FSA. *See* 7 U.S.C. § 1631(c)(4) (describing the requirements of an "effective financing statement").

The FSA provides that, in a state with an established, centralized filing system:

> [a] buyer of farm products takes subject to a security interest created by the seller if . . . the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products; and . . . the secured party has filed an effective financing statement or notice that covers the farm products being sold. . . .

7 U.S.C. § 1631(e)(2). FGDI does not dispute that it failed to register with the Secretary of State prior to the purchase of the farm products here.[5] Given that FGDI failed to register and that Guaranty filed an effective financing statement with Mississippi's centralized system, FGDI took Walker's crops "subject to [the] security interest" created by Walker and held by Guaranty. 7 U.S.C. § 1631(e)(2). Accordingly, the district court committed no error in concluding that Guaranty's PMSI took priority over FGDI's set-off rights under its contracts with Walker.

---

[5] Under the FSA, "farm product" includes "agricultural commodit[ies] such as wheat, corn, soybeans, . . . or a product of such crop . . . in its unmanufactured state . . . that is in the possession of a person engaged in farming operations." 7 U.S.C. § 1631(c)(5).

No. 15-60445

FGDI's arguments that the district court erred in holding that Guaranty's PMSI took priority are premised on an entirely different conception of this case from that presented by Guaranty and accepted by the district court. FGDI argues that, instead of the FSA, Miss. Code Ann. § 75-9-404 governs the instant case, under which FDGI argues that its set-off rights take priority over Guaranty's PMSI. More specifically, FGDI argues that Guaranty took a security interest through assignment of Walker's "accounts" as collateral,[6] that Guaranty was an assignee under Miss. Code Ann. § 75-9-404, and that Guaranty's rights as assignee are subject to the "terms of the agreement between the account debtor [FGDI] and assignor [Walker]."[7]  *See generally* Miss. Code Ann. § 75-9-404.

We cannot agree with FGDI that Guaranty is merely an assignee of Walker's accounts. While Guaranty did take a security interest in Walker's accounts under the ASA, it also took a security interest in Walker's crops and crop proceeds. It is the latter interest on which Guaranty relies in asserting the priority of its security interest over FGDI's contractual set-off rights. The fact that Guaranty also took a security interest in Walker's accounts does not destroy Guaranty's PMSI in Walker's crops or somehow change its PMSI to an assignment.  *See* Miss. Code Ann. § 75-9-103A(c) ("A production-money security interest does not lose its status as such, even if . . . [c]ollateral that is not production-money crops also secures the production-money obligation.").

Neither can we agree with FGDI that this case is governed by Miss. Code Ann. § 75-9-404 and not the FSA. On this argument, the Eighth Circuit's decision in *Farm Credit Services of America, PCA v. Cargill, Inc.*, 750 F.3d 965

---

[6] "Account" is defined as "a right to payment of a monetary obligation, whether or not earned by performance," including "for property that has been or is to be sold." Miss. Code Ann. § 75-9-102(a)(2).

[7] "'Account debtor' means a person obligated on an account, chattel paper, or general intangible." Miss. Code Ann. § 75-9-102(a)(3).

(8th Cir. 2014), is instructive. In *Farm Credit*, the Eighth Circuit addressed a situation similar to the instant case. There, a farmer had a contract to deliver corn grown in 2010 to a buyer, and a lender made a loan to the farmer secured by that corn. *Id.* at 965–66. The farmer delivered only some of the corn required under the contract, and the buyer claimed that its damages "exceeded what it owe[d] [the farmer] for the corn it [did] receive." *Id.* at 966. The lender then brought an action in replevin to recover the corn in the buyer's possession. *Id.* at 965–66. The buyer argued that Nebraska's analogue to Miss. Code Ann. § 75-9-404 controlled, but the Eighth Circuit rejected that argument. *Id.* at 966–67. The court explained that "[the lender] sued to recover the corn (or its proceeds), not to collect on a 'right to payment' such as [the farmer's] accounts receivable[, so] [Neb. Rev. Stat. U.C.C. §] 9–404 d[id] not apply."[8] *Id.* at 967; *see also United States v. Handy & Harman*, 750 F.2d 777, 786 (9th Cir. 1984) (noting that a statute analogous to Miss. Code Ann. § 75-9-404 does not apply when "the secured party's superior property interest [is] in the inventory itself, not the assignment of the account held by the debtor"). The court further explained that "[the buyer's] sale of the corn d[id] not switch [the lender's] suit from one seeking corn, to one seeking a right to payment on an account." *Farm Credit*, 750 F.3d at 967. Accordingly, the court found in favor of the lender and held that "[Neb. Rev. Stat.] U.C.C. § 9–404 does not apply in this case." *Id.* at 698; *see also* LSC ¶ 8.08[4][E] (noting that compliance with the FSA "protects the secured lender from a buyer's recoupment [i.e., set-off] rights under the UCC").

---

[8] FGDI criticizes this case as involving an action in replevin, but the Eighth Circuit made clear that its decision did not turn on the lender's attempt to recover the corn instead of the corn proceeds and noted that section 9–404 would not apply if the lender had "sued to recover the corn . . . proceeds." *Id.*

No. 15-60445

By way of contrast to the Eighth Circuit's decision in *Farm Credit*, FGDI points to the South Dakota Supreme Court's decision in *Consolidated Nutrition, L.C. v. IBP, Inc.*, 669 N.W.2d 126 (S.D. 2003). There, the court held that South Dakota's analogue to Miss. Code Ann. § 75-9-404 applied and that a buyer's set-off rights took priority over a secured party's security interest in the proceeds of farm products. *Id.* at 133–34. However, *Consolidated Nutrition* is inapposite here, as the South Dakota Supreme Court there explicitly held that the FSA did not apply. *See id.* at 129 ("[The secured party] failed to give the notice required to protect its security interest under the FSA."). Because the FSA did not apply in *Consolidated Nutrition*, the Eighth Circuit's *Farm Credit* decision is more analogous to the present case. Considering the Eighth Circuit's reasoning in *Farm Credit*, we hold that the district court committed no error in determining that Miss. Code Ann. § 75-9-404 is inapplicable here or that Guaranty's PMSI takes priority over FGDI's set-off rights.

Having determined that Guaranty's security interest takes priority over FGDI's set-off rights, we now turn to what Guaranty is entitled to recover based on this interest. Guaranty is entitled to recover the proceeds from the sale of Walker's crops because the ASA Guaranty signed with Walker includes the proceeds of Walker's crops in addition to the crops themselves.[9] The proceeds from the sale of Walker's crops include the full value of those crops under the contracts—not just the amount Walker received following the

---

[9] Even if the ASA included only the crops, Guaranty would still be entitled to recover the proceeds of the sale of Walker's crops because a "secured party may claim . . . any proceeds" from the original collateral. Miss. Code Ann. § 75-9-315 cmt. 2; *see also* Miss. Code Ann. § 75-9-315(a)(1)–(2) ("A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and . . . [a] security interest attaches to any identifiable proceeds of collateral.").

application of FGDI's set-off rights under the contracts. Mississippi law defines "proceeds" as including:

> (A) Whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral;
> (B) Whatever is collected on, or distributed on account of, collateral;
> (C) Rights arising out of collateral; . . .

Miss. Code Ann. § 75-9-102(a)(64). FGDI valued the crops that Walker delivered at $417,033.00 but paid only $57,179.38 after applying a set-off for the costs that it incurred because of the crops that Walker failed to deliver. FGDI argues that $57,179.38 constitutes the entirety of the "proceeds," as this was all that was "acquired upon the sale, lease, license, exchange or other disposition of collateral." Miss. Code Ann. § 75-9-102(64)(A). This argument, however, lacks force because what was "acquired upon the sale" of Walker's crops was $417,033.00.[10] FGDI later reduced this amount based on crops that were not delivered, but this failure to deliver was unrelated to the value of the crops that were actually delivered. Therefore, the "proceeds" of Walker's crops include the entire $417,033.00.

We find support for this conclusion in the official comments to Miss. Code Ann. § 75-9-102, which provide that there is "no requirement that property be 'received' . . . for the property to qualify as proceeds." Miss. Code Ann. § 75-9-102 cmt. 13(d). Rather, "[i]t is necessary only that the property be traceable, directly or indirectly, to the original collateral." *Id.* We agree with the district court that the entire $417,033.00 was traceable to Walker's 2012 crops—the original collateral. Moreover, the Eighth Circuit similarly concluded that "proceeds" include the full value of agricultural products. *See Farm Credit,*

---

[10] Similarly, "what [was] distributed on account of [the] collateral" was the full value of the crops, and the "rights arising out of the collateral" included the right to payment for the full value of the crops. Miss. Code Ann. § 75-9-102(a)(64)(B)–(C).

750 F.3d at 967.  Specifically, in stating that a secured party "sued to recover the corn (or its proceeds), not to collect on a 'right to payment' such as [the farmer's] accounts receivable," *id.*, the Eighth Circuit distinguished between a right to payment (what Walker was entitled to receive after FGDI applied its set-off) and proceeds (the total value of the crops).  Because Guaranty is entitled to the entire value of the crops as "proceeds" and not just the amount that FGDI paid Walker after exercising its set-off rights, we find no error in the district court's conclusion that Guaranty has possessory rights in the entire $417,033.00 of Walker's crop proceeds.[11]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[11] The parties do not dispute that Walker's indebtedness to Guaranty exceeds this amount.  Because we conclude that Guaranty is entitled to the full value of the crops as proceeds, we need not address whether the district court erred in determining that the contracts originally signed by MWF were properly assigned to Walker.  If they were not properly assigned, then Guaranty would still be entitled to the full value of the crops. Similarly, we need not address whether the district court erred when it explained that Guaranty is entitled to the full value of the crops because the contracts between Walker and FGDI concerned crops that were future goods under Miss. Code Ann. § 75-9-105 and that an interest in future goods may not pass until the goods are existing and identified.