# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40588

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

TRACTS 31A, LOTS 31 AND 32, Lafitte's Landing Phase Two Port Arthur, Jefferson County Texas, including all buildings, appurtenances, and improvements thereon

       Defendant

STACY WALKER,

       Claimant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:12-CV-171

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:*

The husband of Claimant–Appellant Stacy Walker agreed to forfeit two annuities held solely in his name as a part of a plea agreement with Plaintiff–Appellee, the United States of America.  Stacy contends that the district court

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40588

erred in effectively ordering the forfeiture of her one-half community interest in those annuities. Because the Government was entitled to rely on the legal presumption that her husband was authorized to forfeit the annuities as a part of his plea agreement, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2011, a federal grand jury indicted Calvin Walker, the husband of Claimant–Appellant Stacy Walker, for various types of fraud and money laundering. The indictment generally alleged that Calvin defrauded the Beaumont Independent School District of more than $3.7 million by submitting false or inflated invoices for electrical supplies and materials. The indictment contained a notice of the Government's intention to seek forfeiture of, among other things, two Transamerica Preferred Choice Fixed Annuity Contracts purchased for a total of $3.4 million. The indictment alleged the two annuities represented proceeds from the charged fraud offenses and, therefore, were subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(4), and 28 U.S.C. § 2461(c). The two annuity contracts listed Calvin as the sole owner and Stacy as the primary beneficiary. On December 12, 2011, Calvin's criminal trial ended in a mistrial after the jury was unable to reach a unanimous decision.

On April 10, 2012, the Government filed a civil forfeiture complaint in rem, initiating the present forfeiture proceeding. The complaint alleged, in pertinent part, that the two annuities were subject to forfeiture because they were "property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 666, 1343 or is property traceable to such violation."[1] On June

---

[1] 18 U.S.C. §§ 666 and 1343 concern fraud upon programs receiving federal funds and wire fraud, respectively. Calvin's 32-count indictment charged him with 20 counts of fraud upon programs receiving federal funds in violation of § 666 and five counts of wire fraud in violation of § 1343.

2

7, 2012, Calvin and Stacy Walker filed their own verified claim. The claim asserted that "Calvin Walker and Stacy Walker are the true owners of the . . . two Transamerica Annuities made the subject of the government's Complaint for Forfeiture," and alleged that the Government's complaint was "a belated attempt to bring pressure on Calvin Walker to enter a guilty plea to the false charges he has fought vigorously." The Walkers subsequently filed an answer and counterclaim to the Government's complaint, in which they denied that the annuities were subject to forfeiture[2] and "demand[ed] the return of the subject <u>community property</u>" after hearing and trial.

On July 13, 2012, the Government filed an information in the criminal proceeding, charging Calvin with one misdemeanor count of willful failure to pay income tax in violation of 26 U.S.C. § 7203. Calvin pleaded guilty, with the benefit of a plea agreement, to the charge on July 17, 2012. As relevant to this appeal, the plea agreement contained a restitution provision, stating that restitution "shall consist solely of taxes, penalties, and interest," and that "[t]he payment of any tax liability will be accomplished by . . . payment directly to the Internal Revenue Service from the proceeds of the liquidation of any annuity currently held under seizure warrant in this matter." The plea agreement also contained a forfeiture provision, stating, in pertinent part:

> The defendant agrees to enter into an agreed order of forfeiture in [the civil forfeiture proceeding] and agrees to forfeit to the United States voluntarily and immediately all of the defendant's right, title and interest to the property which is subject to forfeiture under the agreed order pursuant to 18 U.S.C. § 981. The property subject to [the] agreed order of forfeiture are the liquidated value of two annuities . . . less $200,000 to be returned to the defendant

---

[2] Specifically, in the answer and counterclaim, Calvin denied "that he is guilty of any acts that would justify seizure or forfeiture of the property in question," noting that his criminal trial resulted in "a hung jury in which the jurors were unable to agree on a verdict." For her part, Stacy noted that she "has not been accused of any acts or violations which would justify seizing or forfeiting any of her interest in [the annuities]."

and the amount of any fine imposed by the court. . . .  The defendant agrees not to file a claim, and agrees to withdraw any filed claim, to the [annuities] in any civil proceeding, administrative or judicial, which may or has been initiated.

On November 12, 2013, the Government moved for entry of judgment in the civil forfeiture proceeding, asserting that the plea agreement resolved all of the issues in the proceeding except one—whether interest that accumulated on the two annuities after entry of the plea agreement was subject to forfeiture—and requesting that the district court resolve this dispute.[3]  The Walkers filed an objection to the Government's motion, arguing that its proposed judgment allocated a greater amount of funds to the IRS than had been agreed because the IRS was impermissibly calculating interest and penalties assuming a finding of fraudulent conduct.

On April 3, 2014 (more than 20 months after the execution of Calvin's plea agreement), the Walkers' counsel moved to stay entry of judgment in the civil forfeiture proceeding to address a conflict of interest in their joint representation.  Counsel stated that, although Calvin had agreed to forfeit his interest in the two annuities and "abide[d] by that agreement," Stacy "was not a party to the plea agreement" and "would not consent to an entry of judgment in this case that would divest her of her [community] interest in the annuities."  Counsel asserted that Stacy informed him of her lack of consent on April 2,

---

[3] The Government's delay in moving for entry of judgment was attributable to two factors.  First, on September 4, 2012, the Beaumont Independent School District filed a claim in the civil forfeiture proceeding, alleging that it had "assisted the United States Attorney's office in gathering information [and] witnesses for prosecution of [Calvin Walker]" and seeking "to obtain payment for attorney fees and costs associated with the attempted prosecution of Calvin Walker."  The district court granted the Government's motion to strike the District's claim on June 10, 2013.  That order is not at issue in this appeal.  Second, the proceedings were stayed for a period of time due a lapse in appropriation for the operation of the Department of Justice.  *See* W.D. Tex. Gen. Order No. 13-19.

2014, at which point he told her that he could not continue to represent her in this matter.

On April 18, Stacy's new counsel filed a response and objection to the Government's motion for entry of judgment. In pertinent part, Stacy asserted that the two annuities were community property and, as such, she was the owner of one-half of them. She further asserted:

> While claimant Calvin Walker, as a part of his plea agreement, waived notice of any forfeiture proceeding and expressly agreed to forfeit "the defendant's (his) interest" in the two annuities, claimant Stacy Walker has not waived anything, and has never agreed with the government to deal with her interest in the two annuities. As such, Stacy Walker's interest in the two annuities has never been litigated in this proceeding.

Stacy requested the district court to deny the Government's motion for entry of judgment to the extent it sought to forfeit Stacy's interest in the two annuities.

On September 30, 2014, a magistrate judge granted the government's motion for judgment of forfeiture. After Stacy appealed to the district court, the magistrate judge withdrew the order, and the Government moved for summary judgment. In its motion, the Government asserted, in pertinent part, that the two annuities are presumed to be subject to Calvin's sole management, control, and disposition because they were held in his name; therefore, the Government asserted, it was entitled to rely on Calvin's authority to agree to forfeit the two annuities under section 3.104 of the Texas Family Code.[4] On

---

[4] Section 3.104 of the Texas Family Code, in relevant part, provides:

A third person dealing with a spouse is entitled to rely, as against the other spouse or anyone claiming from that spouse, on that spouse's authority to deal with the property if:

> (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

> (2) the person dealing with the spouse:

No. 16-40588

September 3, 2015, the magistrate judge entered a report and recommendation that the district court grant the Government's motion, finding that the Government was entitled to rely on Calvin's authority to deal with the two annuities under section 3.104. Both Stacy and Calvin objected to the report and recommendation, and on December 1, 2015, the district court, after conducting a de novo review, adopted the report and recommendation and granted summary judgment in favor of the Government. The district court separately entered final judgment, and Stacy timely appealed the grant of summary judgment.

## II.  STANDARD OF REVIEW

This court reviews a district court's order granting summary judgment de novo. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 506 (5th Cir. 2008). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Guar. Bank & Trust Co. v. Agrex, Inc.*, 820 F.3d 790, 794 (5th Cir. 2016) (per curiam) (quoting *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014)). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *Id.* (alteration in original) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)).

---

(A) is not a party to a fraud on the other spouse or another person; and

(B) does not have actual or constructive notice of the spouse's lack of authority.

Tex. Fam. Code Ann. § 3.104(b).

6

No. 16-40588

## III. FORFEITURE OF THE ANNUITIES

On appeal, Stacy argues that the district court erred in three respects in granting summary judgment in favor of the Government.[5]  Because Stacy's arguments turn in large part on Calvin's ability to dispose of the two annuities under Texas law, it is instructive first to review Texas law concerning a spouse's ability to manage, control, and dispose of community property assets.[6] In analyzing that issue, Texas distinguishes between joint management community property and sole management community property.  *See* Tex. Fam. Code Ann. § 3.102.  Under section 3.102 of the Texas Family Code, a spouse's sole management community property includes his or her "(1) personal earnings; (2) revenue from separate property; (3) recoveries from personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control and disposition." *Id.* § 3.102(a).  All other community property is joint management community property, unless the spouses have provided otherwise by power of attorney or other written agreement.  *Id.* § 3.102(c).

---

[5] Stacy also appears to argue, in a footnote, that the district court erred in a fourth respect—namely, granting summary judgment when Calvin's plea agreement "is . . . ambiguous as to whether . . . Calvin . . . was trying to contract away all of the annuities, or rather, as the plea agreement states 'his interest' in the two annuities."  However, Stacy does not raise this argument in the body of her brief; therefore, her argument is waived.  *See, e.g.*, *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived." (quoting *Bridas S.A.P.I.C. v. Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003))).  Regardless, even if we were to conclude that the plea agreement was ambiguous on this point, Stacy has failed to point to any extrinsic evidence that would create a genuine issue of material fact as to the parties' intent to merely contract with respect to Calvin's one-half interest in the annuities.  *See, e.g.*, *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 384 (5th Cir. 1990) (recognizing that summary judgment is appropriate when extrinsic evidence does not raise genuine issue of material fact as to parties' intent).

[6] The parties do not dispute that the funds used to purchase the two annuities were from the community property of Calvin and Stacy Walker and, therefore, are community property themselves under Texas law.

7

No. 16-40588

Joint management community property—as the name suggests—is subject to the joint management, control, and disposition of the spouses. *See id.* Accordingly, to effect a valid conveyance of joint management community property, Texas law requires both spouses to join in the transaction. *See, e.g.*, *City of Emory v. Lusk*, 278 S.W.3d 77, 85 (Tex. App.—Tyler 2009, no pet.); *see also, e.g.*, 38 TEX. PRAC., MARITAL PROPERTY AND HOMESTEADS § 15.13 ("[I]f a spouse does not have a written power of attorney or other agreement, the spouse may not convey or otherwise dispose of joint management community property without the joinder of the other spouse."). Conversely, Texas law provides that each spouse has the power to convey his or her sole management community property without approval of the other spouse, even though both spouses have an undivided one-half interest in the property. *See, e.g.*, *Lemaster v. Top Level Printing Ink, Inc.*, 136 S.W.3d 745, 748–49 (Tex. App.—Dallas 2004, no pet.); *see also, e.g.*, 38 TEX. PRAC., MARITAL PROPERTY AND HOMESTEADS § 15.8 ("A spouse, in dealing with that spouse's sole management community property, may act alone.").

Because property that appears to be subject to sole management may, in fact, be subject to joint management—and thus require joinder of both spouses to affect a valid conveyance—third parties that enter into transactions involving community property might be placed in a precarious position. Section 3.104 of the Texas Family Code, however, offers third parties some protection. Under section 3.104, property held in one spouse's name is presumed to be sole management community property, and if the named spouse conveys such property to a third party, the third party is entitled to rely upon the authority of that spouse to convey the property if, in pertinent part, the third party "does not have actual or constructive notice of the spouse's lack of authority" to deal with the property. Tex. Fam. Code Ann. § 3.104(b)(2)(B).

No. 16-40588

With this background in place, we turn back to Stacy's arguments.  Stacy first points to section 3.102(c) of the Texas Family Code, which states that "community property is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement."  She argues that, because the funds used to purchase the two annuities were properly considered community property, the annuities are subject to joint management and disposition under section 3.102.  As the magistrate judge pointed out, however, the annuities are presumed to be Calvin's sole management community property under section 3.104(a) because they were held in Calvin's name only, and section 3.104(a) "trumps" section 3.102.  *Jean v. Tyson–Jean,* 118 S.W.3d 1, 5 (Tex. App.— Houston [14th Dist.] 2003, pet. denied).

Stacy next argues that the Government knew of Calvin's lack of authority from the joint claim and answer filed in the forfeiture proceeding that referred to the annuities as "community property" and stated Stacy's (and Calvin's) objection to forfeiture.  Therefore, Stacy argues, the Government is not entitled to rely upon section 3.104 of the Texas Family Code.  In support, Stacy points to *Williams v. Portland State Bank*, 514 S.W.2d 124 (Tex. Civ. App.—Beaumont 1974, writ dism'd).  In *Williams,* a note and deed of trust were initially prepared by a bank for execution by both the debtor and his spouse. 514 S.W.2d at 125.  The spouse refused to execute either, and the debtor gave this information to the president of the bank; at that point, a new note and deed were prepared for execution by the debtor alone.  *Id.*  The court concluded that the bank's knowledge of the wife's refusal constituted constructive notice of the debtor husband's lack of sole authority to deal with the property.  *Id.*

This case is readily distinguishable from *Williams.*  Here, the Walkers' joint claim and answer served to notify the Government that the annuities were community property in which Stacy owned a one-half interest.  However,

9

unlike in *Williams*, the Walkers' joint claim and answer did nothing to suggest that the annuities were *joint management* community property that Calvin could not transfer without Stacy's consent. Indeed, as the district court recognized, the Government had good reason to believe that Calvin did have authority to transfer the annuities without Stacy's consent: Stacy was represented in the present forfeiture proceeding by the same attorney who was negotiating the plea agreement in Calvin's criminal proceeding; Stacy was present at Calvin's plea hearing, at which Calvin confirmed his understanding of the plea agreement; and Stacy never brought the lack of Calvin's authority to the attention of her attorney or the Government. Accordingly, under section 3.104 of the Texas Family Code, the Government was entitled to rely on Calvin's authority to deal with the annuities in executing the plea agreement. *See In re McCloy*, 296 F.3d 370, 374 (5th Cir. 2002) (concluding that mere notice of the fact that property held in one spouse's name was community property was insufficient to establish notice that the named spouse lacked authority to deal with that property as sole management community property); *see also, e.g.*, *Lemaster*, 136 S.W.3d at 748–49.

Finally, Stacy argues that the Government was required by "statutory and regulatory civil asset forfeiture protocol to protect her spousal interest in [the annuities]," ostensibly by obtaining her express consent to the plea agreement. Yet Stacy does not point to any statute or regulation that actually requires the Government to obtain spousal consent to an agreement providing for the forfeiture of property that is, under state law, presumptively subject to a party's sole management, control, and disposition.[7] And Stacy provides no

---

[7] Stacy instead cites primarily to two internal documents of the Department of Justice: the United States Attorneys' Manual and the Asset Forfeiture Policy Manual. Those documents, however, are not intended to be binding. *See* DEPT. OF JUSTICE, UNITED STATES ATTORNEYS' MANUAL § 1–1.100 (2016), https://www.justice.gov/usam/united-states-attorneys-manual ("The Manual provides only internal Department of Justice guidance. It is

No. 16-40588

compelling justification for this court to treat Calvin's agreement in this case any differently than another agreement he might have made under state law to dispose of the annuities—that is, to enforce the agreement notwithstanding the absence of spousal consent.[8]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal"); U.S. DEP'T OF JUSTICE, ASSET FORFEITURE POLICY MANUAL 21 (2016), https://www.justice.gov/criminal-afmls/file/839521/download ("These guidelines are intended to be sufficiently flexible to enable each [United States Attorneys' Office] . . . to establish and utilize local procedures that clearly define and assign local pre-seizure/restraint planning responsibilities."). Moreover, the documents Stacy cites do not address the circumstances of this case, much less recommend obtaining spousal consent in such cases. For example, the section of the Asset Forfeiture Policy Manual that Stacy cites concerns foreign enforcement of judgments, which is not implicated in this case. *See* ASSET FORFEITURE POLICY MANUAL, *supra*, at 142.

[8] Indeed, Stacy herself may have benefited, at least in part, from Calvin's agreement. At the time the agreement was drafted, the Government had been seeking forfeiture of two parcels of land and a vehicle, in addition to the two annuities. As part of the agreement, the Government dropped its claim to the land and vehicle, and returned—to Stacy personally— three checks payable to Calvin's company for the sum of $520,000. The Government also agreed that all of Calvin's restitution would be paid from the proceeds of the two annuities.