**Affirmed and Memorandum Opinion filed August 29, 2025**



**In The**

# Fifteenth Court of Appeals

---

**NO. 15-24-00085-CV**

---

**CALVIN GARY WALKER D/B/A WALKER'S ELECTRIC COMPANY,
Appellant**

**V.**

**TEXAS DEPARTMENT OF LICENSING AND REGULATIONS
ENFORCEMENT DIVISION, Appellee**

---

**On Appeal from the 455th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-24-002909**

---

**MEMORANDUM OPINION**

After Calvin Walker was convicted in state court of fabricating invoices, receipts, and checks to support a $1.2 million payment he received from a school district for electrical work, his Master Electrician and Electrical Contractor's licenses were administratively revoked. But in his pro se appeal for judicial review, rather than suing and serving the state agency that revoked his licenses he insisted

on suing and serving the enforcement division within that agency, despite repeated warnings from opposing counsel and the trial judge that he could not do so. Walker's error was a misnomer that could have been easily corrected, but he repeatedly and adamantly refused to do so before judgment was signed dismissing his petition. While we try to avoid dismissing pro se claims due to a simple misunderstanding, a deliberate refusal to follow the rules is not an excuse to start this case over from the beginning after judgment. We affirm the trial court's dismissal.

## Background

### A.    The Criminal Proceedings

For more than a dozen years, Calvin Walker has been involved in protracted criminal and appellate proceedings in various state and federal courts. He was initially indicted in May of 2011 on federal charges arising from allegedly submitting over $3.7 million in false or inflated invoices for electrical work charged to the Beaumont Independent School District.[1] After a mistrial in federal court, he agreed to plead guilty to a misdemeanor count of willful failure to pay income taxes, in return for a five-year suspended sentence and forfeiture of annuities with a face value of $3,000,000.[2]

Then in 2014, he was indicted in state court on multiple counts of "Securing Execution of a Document by Deception,"[3] at the time a first-degree felony.[4] Pre-trial took several years because Walker filed unsuccessful habeas appeals, claiming in

---

[1]     *See United States v. Tracts 31a, et al.*, 852 F.3d 385, 387 (5th Cir. 2017).

[2]     *See id.*, 2015 WL 13731148, at *1 (E.D. Tex. Sept. 3, 2015), *report and recommendation adopted sub nom. United States v. Tract 31A*, No. 1:12-CV-171, 2015 WL 7738021 (E.D. Tex. Dec. 1, 2015).

[3]     *See* TEX. PENAL CODE § 32.46(a).

[4]     Act of May 10, 1997, 75th Leg., R.S., ch. 189, § 2, Tex. Gen. Laws 1045, 1046 (amended 2011) (current version at TEX. PENAL CODE § 32.46).

2014–16 that the indictments did not fall within the dual-sovereignty doctrine allowing prosecution in both federal and state courts arising from the same occurrence,[5] and again in 2017–18 for failing to allow him to call witnesses in his claim that the doctrine was unconstitutional.[6]

When the state charges finally went to trial in September of 2019, the jury found Walker guilty, assessed punishment at ten years of imprisonment, recommended probation, and assessed a $10,000 fine.[7] After sentencing and restitution hearings, the trial court ordered that Walker pay BISD restitution of $1,172,656.01.[8]

Walker appealed his conviction to the Ninth Court of Appeals in January of 2020, which affirmed on February 9, 2022. As relevant here, the Ninth Court held in a detailed 10,000-word opinion that Beaumont I.S.D. paid Walker's company $1,285,064 based on invoices and delivery receipts from Summit Electric Supply that Walker himself had fabricated, and checks he signed allegedly to pay Summit that were never sent or actually paid.[9] According to the opinion, a manager from Summit testified that it had no record of such deliveries, that it's computer system could not have generated the alleged delivery receipts, that the invoices included items Summit does not carry and others priced "ridiculously high," and that Summit had never received the alleged checks or payment.[10] An FBI agent involved in

---

[5]      *See Ex Parte Walker*, 489 S.W.3d 1, 3 (Tex. App.—Beaumont 2016, pet. ref'd), *cert denied*, 581 U.S. 938 (2017).

[6]      *See Ex parte Walker*, 2018 WL 1864618, at *1 (Tex. App.—Beaumont Apr. 18, 2018, pet. ref'd).

[7]      *See Walker v. State*, 659 S.W.3d 43, 56–57 (Tex. App.—Beaumont 2022, pet. ref'd), *cert denied*, 143 S.Ct. 792 (2023).

[8]      *Id*. at 57.

[9]      *Id*. at 49–51.

[10]      *Id*. at 52.

searching Walker's residence testified that he found the two checks Walker submitted to BISD as proof of payment, that his bank account had insufficient funds to pay them at the time, and that neither was ever cashed.[11] An expert for the State testified that the combined total actual cost for the materials actually used for the BISD job was approximately $111,000, one-tenth of what Walker had been paid.[12]

On the legal points in the appeal, the Ninth Court of Appeals held that the statute under which Walker was convicted was not unconstitutionally vague, that sufficient evidence supported the conviction, and rejected other complaints about the submission of evidence, the jury instructions, and the restitution order.[13]

Walker appealed to the Court of Criminal Appeals, which refused his petition for discretionary review on August 24, 2022.[14] He then appealed to the U.S. Supreme Court, which denied certiorari on February 21, 2023.[15] Walker also filed a post-trial habeas petition on January 24, 2023, asserting ineffective assistance of counsel. After an evidentiary hearing the trial court denied relief, the Ninth Court of Appeals again affirmed on April 2, 2025, and the Court of Criminal Appeals denied discretionary review on June 18, 2025.[16]

## B.    The Administrative Proceedings

In the interim, the administrative proceedings at issue here took place.

The Texas Department of Licensing and Regulation ("TDLR") is the "primary state agency responsible for the oversight of businesses, industries, general trades,"

---

[11]    *Id*. at 53.

[12]    *Id*.

[13]    *Id*. at 57–65.

[14]    *Walker*, 659 S.W.3d at 43

[15]    *Walker v. Tex.*, 143 S.Ct. 792 (2023).

[16]    *Ex parte Walker*, 2025 WL 980082, at *1 (Tex. App.—Beaumont Apr. 2, 2025, pet. ref'd).

and other occupations assigned to it by the Legislature.[17] Its governing statute, the Texas Occupations Code, provides that "a licensing authority may suspend or revoke a license … on the grounds that the person has been convicted of … an offense that directly relates to the duties and responsibilities of the licensed occupation.[18] After the Court of Criminal Appeals denied review of Walker's conviction, TDLR opened proceedings to revoke both Walker's Master Electrician license and his Electrical Contractor's license by sending him a Notice of Violation on January 17, 2023.

TDLR is governed by a seven-member commission appointed by the Governor.[19] State law requires the agency to "clearly separate the policy-making responsibilities of the commission and the management responsibilities of the executive director and the staff of the department,"[20] so complaints to TDLR are delegated to its enforcement division, which is subdivided into intake, investigation, and prosecution sections.[21] When the agency proposes to revoke a license, the licensee is entitled to a hearing conducted by the State Office of Administrative Hearings (SOAH), which issues a proposal for decision to the Commission.[22] By state law, the Commission alone makes the final decision whether to deny, revoke, suspend, or refuse to renew a license.[23]

In this case, SOAH conducted a remote hearing to consider revocation of Walker's licenses based on testimony and evidence submitted at his criminal trial in state court. On September 26, 2023, the presiding administrative law judge (ALJ)

---

[17]     TEX. OCC. CODE § 51.051.

[18]     *Id*. § 53.021.

[19]     *Id.* §§ 51.051, .052.

[20]     *Id.* § 51.105.

[21]     *Id*. § 51.252; TDLR Br. Appx. D at 123.

[22]     *Id*. § 51.354.

[23]     *Id*. § 51.353(a).

issued a Proposal for Decision recommending that both licenses be revoked.[24] Applying the guidelines and "additional factors" required by law for persons convicted of crimes,[25] the ALJ found that crimes "involving fraud or deceptive trade practices are directly related to the duties and responsibilities of an electrician," since an electrician's recommendations "are frequently relied upon by customers who have no understanding of electrical workings," and "once electrical installations are completed, they are usually closed-in behind walls, hidden from view."[26] The ALJ also found that Walker "did not explain whether he has learned from his experience, nor why he should be trusted to enter contracts where customers rely on him to tell them what is needed and to supply electrical services and equipment. Without any assurance that he has been rehabilitated, the Department has a legitimate concern that he may reoffend." The ALJ recommended that both licenses be revoked.[27]

The Commission agreed with that recommendation and voted to revoke Walker's licenses on January 30, 2024.[28] He filed a motion for rehearing 10 days later, which the Commission denied in a final decision dated April 12, 2024.[29]

## C. The Trial Court Proceedings

On May 8, 2024, Walker filed a pro se petition for judicial review in the Travis County district court challenging the revocation. The style of Walker's petition, the citation, and the return of service all listed "Texas Department of Licensing and

---

[24]     Both sides attach the proposal [PFD] to their briefs.

[25]     *See* TEX. OCC. CODE §§ 53.023, .025.

[26]     [PFD at 9].

[27]     [PFD at 18].

[28]     This is pleaded by both sides, though the document itself is not in the appellate record.

[29]     This document again is not in the clerk's record, though Walker attached an unverified copy as an "appendix" to his brief as "Attachment 20-A." TDLR pleaded it was denied on April 13th rather than the 12th.

Regulations *Enforcement Division*" (emphasis added) as the respondent.

TDLR's enforcement division ("the Division") immediately filed a plea to the jurisdiction notifying Walker he had named the wrong party, and arguing that Administrative Procedure Act waived immunity for review only of final decisions made by TDLR itself:

> The final decision to revoke the Petitioner's license, which is the basis for this suit, was made by the Commission and the state agency responsible for administering the licensing program is the Texas Department of Licensing and Regulation (TDLR). Texas Occupations Code §§ 51.306(a), 51.356(a), and 51.051. As the Division did not have any role in making the final decision … the Division is not a proper party to a suit for judicial review in this context, and the Court should dismiss all claims made herein against them.

Walker filed a response to the plea the very next day, adamantly insisting that the Division was the proper party and refusing to amend to correct it. He based his view entirely on the format of the "Notice of Violation" he had received 16 months earlier, the heading of which listed as the issuing agency in large, bold, capital letters "**TEXAS DEPARTMENT OF LICENSING & REGULATION**" —and on the following *address line* in much smaller, normal font listed the agency's contact information: "Enforcement Division • PO Box 12157 • Austin, Texas 78711 • (512) 539-5600 • Fax (512) 539-5698." Walker pleaded that the Division was "NOT INDEPENDENT OF TDLR" (which is correct), and that the "final decision to revoke petitioner's licenses was decided by the Enforcement Division" (which is incorrect). He asked the trial court to "place this case under the 'trial de Novo Rule' instead of the 'Substantial Evidence Rule'" because the agency "was fore warned [sic] with documented proof that the evidence they brought was flawed." Then and for months afterward, he continued to file pleadings insisting in florid and emphatic text and every typeface available (including bold, italics, underlines, all caps, and combinations of them) that he intended to sue the Division as the culprit, not

7

TDLR.[30]

At the hearing in the trial court on the Division's plea on August 9th, Walker told the trial judge "I completely object to [counsel's] statement as it relates to the enforcement division not being a proper party to the suit." The trial judge personally explained the jurisdictional defect, and gave Walker a final opportunity to change his mind:

> THE COURT: I am taking judicial notice of the court's file and looking at the original petition … it really specifically only addresses the enforcement division…. I think that's the problem that we may have here, is that the entity that can actually give you back your license is not the enforcement division of TDLR, and that's the issue. So even if at the end of all this I agreed with you and issued an order, my order wouldn't be able to get what you need because it's not the right entity that's in your lawsuit. That's my concern for this.
>
> MR. WALKER: Well, Your Honor, the enforcement division is an entity within -- it is part of TDLR. It's just the enforcement division. If they are allowed to actually revoke my license, they are -- they should be allowed to give them back. You know, this is all coming from the powers that be, which is TDLR allowing the enforcement division to make those calls.

Later the same day, the trial court signed an order granting the plea to the jurisdiction and dismissing "all claims against the TDLR" with prejudice. The next day, August 10th, the trial court signed a nunc pro tunc order clarifying that it was *the Division* whose plea to the jurisdiction was granted and that was dismissed with prejudice.

Two days later, Walker filed a motion to modify the first order because TDLR "was never a party to this suit," should "not be released from a suit they were never

---

[30]   *See* Petitioner's "Response to Defendents' [sic] Notice of Hearing" filed June 6, 2024; "Request for Injunctive Relief" filed June 25, 2024, "'Brief' on Judicial Review" filed July 9, 2024; "Reply: to Defendant's Response to Request for Injunctive Relief" filed July 15, 2024; and "Motion Objecting to Defendant's Plea to the Jurisdiction" filed August 6, 2024.

a party to," that his suit "was against TDLR'S ENFORCEMENT DIVISION," and asking the court to modify the dismissal order "so that I may move forward with suing the correct party's [sic] which is [TDLR]." Later the same day, Walker filed an Amended Petition for Judicial Review in the same cause number dropping the "Enforcement Division" from the style of the case but making no other substantive changes.

## Discussion

Because the Division is not a separate legal entity from TDLR, this is a case of misnomer rather than misidentification.[31] "When the correct party sues or is sued under the incorrect name, the court acquires jurisdiction after service with the misnomer if it is clear that no one was misled or placed at a disadvantage by the error."[32] TDLR could not have been misled here, since Walker's petition was served on TDLR's general counsel. Normally, misnomers are easily corrected by amending the pleadings to state the correct name, with the amended pleading relating back to the date of the original filing.[33]

But regardless of misnomer, a trial court cannot acquire jurisdiction over a government entity absent waiver of immunity. As the Division's plea pointed out, the APA waives immunity to challenge final administrative orders of a state agency, but not actions of divisions within it. Walker repeatedly was given an opportunity to amend his petition before judgment, but adamantly refused. Even in misnomer cases, "at some point before judgment, the plaintiff must amend the petition to add the

---

[31] *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999) ("Misnomer arises when a plaintiff sues the correct entity but misnames it.").

[32] *Reddy P'ship/5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012).

[33] *Id*. at 377; *see also Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 628 (Tex. 2023).

correct legal name of the actual defendant."[34] Rule 301 of the Rules of Civil Procedure provides "The judgment of the court shall conform to the pleadings," so a judgment cannot be rendered against an unnamed party.[35]

If "a plaintiff fails to plead facts sufficient to demonstrate the trial court's jurisdiction, courts generally should afford the plaintiff the opportunity to replead unless the pleadings affirmatively negate the existence of jurisdiction."[36] But Walker's petition was not missing jurisdictional facts; it was missing the proper party, and it was far beyond the deadline in the APA for adding a new defendant.[37] Once a judgment is signed, courts will not correct a party's error "by retroactively substituting in the correct party on his behalf."[38]

As the Supreme Court recently held, there is a difference between pro se litigants whose "genuine misunderstanding" of the rules results in "a lack of deliberate or intentional failure to comply," versus those who make "a conscious or strategic decision" not to comply with the rules.[39] By insisting on relying on the address line in an agency letter, Walker chose to disregard what the law, the lawyers, and the judge were telling him. Having rejected every opportunity to amend his petition, he was not entitled to yet another opportunity after judgment was signed dismissing the party he insisted on suing.

---

[34] *Chilkewitz*, 22 S.W.3d at 829.

[35] *See* TEX. R. CIV. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules."); *Bailey v. Vanscot Concrete*, 894 S.W.2d 757, 761 (Tex 1995).

[36] *Fraley v. Tex. A & M Univ. Sys.*, 664 S.W.3d 91, 101 (Tex. 2023)

[37] *See* TEX. GOV'T CODE § 2001.176(a) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date the decision or order that is the subject of complaint is final and appealable.").

[38] *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 761 (Tex. 1995).

[39] *In re S.V.*, 697 S.W.3d 659, 662 (Tex. 2024).

## Conclusion

We do not fault Walker for not being a lawyer, only for refusing to listen to anyone who was. Pro se litigants are not exempt from the rules of procedure; "Having two sets of rules—a strict set for attorneys and a lenient set for pro se parties—might encourage litigants to discard their valuable right to the advice and assistance of counsel."[40] The judgment of the trial court is affirmed.

<u>/s/ Scott Brister</u>
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.
Justice Farris concurs in the judgment only.

---

[40] *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005).